1

2

3

4

5

6

7

8

9                      UNITED STATES DISTRICT COURT

10                    SOUTHERN DISTRICT OF CALIFORNIA

11

WILLIAM CECIL THORNTON,          )    Civil No. 10cv01583 RBB
12                               )
                    Plaintiff,   )    **ORDER GRANTING IN PART AND**
13                               )    **DENYING IN PART DEFENDANTS'**
       v.                        )    **MOTION TO DISMISS COMPLAINT**
14                               )    **[ECF NO. 24]**
ARNOLD SCHWARZENEGGER, Governor  )
15  of California; MATTHEW CATE,  )
    Secretary of Corrections; JOHN )
16  DOE LEWIS, Parole Unit       )
    Supervisor; MARK JOSEPH, Parole )
17  Agent; CHRISTINE CAVALIN,    )
    Parole Agent; JOHN DOE #1,   )
18  Parole Agent,                )
                                 )
19                   Defendants. )
    _____ )
20

21        Plaintiff William Cecil Thornton, a state prisoner proceeding

22   pro se and in forma pauperis, filed a Complaint under the Civil

23   Rights Act pursuant to 42 U.S.C. § 1983 [ECF Nos. 1, 5].  In his

24   Complaint, Thornton consented to magistrate judge jurisdiction.

25   (Compl. 7, ECF No. 1.)  On November 1, 2010, Defendants filed a

26   Notice, Consent, and Reference of a Civil Action to a Magistrate

27   Judge [ECF No. 23].  The next day, they filed a Motion to Dismiss

28   Complaint, accompanied by a Memorandum of Points and Authorities,

1  and a Request for Judicial Notice [ECF No. 24].  This Court granted
2  Plaintiff's two requests for an extension of time to respond to
3  Defendants' Motion [ECF Nos. 29, 32, 43-44].  Thornton filed his
4  Opposition to Motion to Dismiss Complaint on January 7, 2011, along
5  with a Memorandum of Points and Authorities, and a Request for
6  Judicial Notice [ECF No. 46].  On January 20, 2011, Defendants
7  filed a Reply [ECF No. 53].

8      The Court has reviewed the Complaint and exhibits, Defendants'
9  Motion to Dismiss and attachments, Plaintiff's Opposition and
10  attachments, and Defendants' Reply.  For the reasons stated below,
11  Defendants' Motion to Dismiss is **GRANTED.**

12                  **I.  FACTUAL BACKGROUND**
13      The allegations in the Complaint arise from events that
14  occurred while Plaintiff was incarcerated at Richard J. Donovan
15  State Prison ("Donovan"), as well as after he was released on
16  parole.[1]  (Compl. 1, 3, ECF No. 1.)  In count one, Thornton
17  contends that on November 10, 2007, he was released from Donovan on
18  parole, where he had been serving time for a parole violation.
19  (Id. at 3.)  On September 17, 2007, before his release, Plaintiff
20  claims he was served with papers informing him that he would not be
21  allowed to live with his wife in their home because of "the
22  provisions of Proposition 83, that . . . was applied to [him]
23  because of [a] 1987 Tennessee case."  (Id.)  Thornton alleges that
24  his parole conditions violate his constitutional rights to due
25  process, freedom of association, and to be free from cruel and
26  unusual punishment.  (Id.)

27  _____

28      [1] Thornton is currently incarcerated at the California
    Correctional Institution in Tehachapi, California.  (Id. at 1.)

1    In count two, Plaintiff maintains that on November 21, 2007,

2  he was assigned to a "GPS unit of parole" and was given "overbroad

3  conditions of parole." (Id. at 4.)  He was assigned to a sex

4  offender unit supervised by Parole Agent Christine Cavalin.  (Id.)

5  As a result, his rights to due process, to be free from cruel and

6  unusual punishment, and his "interest of liberty" were violated.

7  (Id.)

8    Finally, in count three, Plaintiff alleges he was "banished"

9  from living with his wife in their residence because "it was not in

10  compliance with Proposition 83 or California Penal Code § 3003.5."

11  (Id. at 5 (citation omitted).)  But in 2008, Plaintiff contends,

12  another sex offender who had been assigned to the same parole unit,

13  Richard Lilly, initiated an intimate relationship with Thornton's

14  wife and was permitted to move into the residence with her.  (Id.)

15  Plaintiff states, "[Lilly] was allowed to move into the very home I

16  was told was out of compliance to me as a sex offender."  (Id.)

17  Thornton argues that he was therefore discriminated against in

18  violation of the Equal Protection Clause.  (Id.)

## II.   APPLICABLE LEGAL STANDARDS

### A.   Motions to Dismiss Pursuant to Rule 12(b)(6)

21    A motion to dismiss for failure to state a claim pursuant to

22  Federal Rule of Civil Procedure 12(b)(6) tests the legal

23  sufficiency of the claims in the complaint.  See Davis v. Monroe

24  County Bd. of Educ., 526 U.S. 629, 633 (1999).  "The old formula --

25  that the complaint must not be dismissed unless it is beyond doubt

26  without merit -- was discarded by the Bell Atlantic decision [Bell

27  Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007)]."  Limestone

28  Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 803 (7th Cir. 2008).

10cv01583 RBB

A complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp., 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).  The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff.  Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (citing Karam v. City of Burbank, 352 F.3d 1188, 1192 (9th Cir. 2003)); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); N.L. Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

The court does not look at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Bell Atl. Corp., 550 U.S. at 563 n.8.  A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001) (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff."  Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); see Halkin v. VeriFone, Inc., 11 F.3d 865, 868 (9th Cir.

4

1  1993); <u>see also</u> <u>Cholla Ready Mix, Inc.</u>, 382 F.3d at 973 (quoting

2  <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754-55 (9th Cir.

3  1994)) (stating that on a Rule 12(b)(6) motion, a court "is not

4  required to accept legal conclusions cast in the form of factual

5  allegations if those conclusions cannot reasonably be drawn from

6  the facts alleged[]").  "Nor is the court required to accept as

7  true allegations that are merely conclusory, unwarranted deductions

8  of fact, or unreasonable inferences."  <u>Sprewell v. Golden State</u>

9  <u>Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).

10      In addition, when resolving a motion to dismiss for failure to

11 state a claim, courts generally may not consider materials outside

12 of the pleadings.  <u>Schneider v. Cal. Dep't of Corrs.</u>, 151 F.3d

13 1194, 1197 n.1 (9th Cir. 1998); <u>Jacobellis v. State Farm Fire &</u>

14 <u>Cas. Co.</u>, 120 F.3d 171, 172 (9th Cir. 1997); <u>Allarcom Pay</u>

15 <u>Television Ltd. v. Gen. Instrument Corp.</u>, 69 F.3d 381, 385 (9th

16 Cir. 1995).  "The focus of any Rule 12(b)(6) dismissal . . . is the

17 complaint."  <u>Schneider</u>, 151 F.3d at 1197 n.1.  This precludes

18 reviewing "new" allegations that may be raised in a plaintiff's

19 opposition to a motion to dismiss brought pursuant to Rule

20 12(b)(6).  <u>Id.</u> (citing <u>Harrell v. United States</u>, 13 F.3d 232, 236

21 (7th Cir. 1993)).

22      "When a plaintiff has attached various exhibits to the

23 complaint, those exhibits may be considered in determining whether

24 dismissal [i]s proper . . . ."  <u>Parks Sch. of Bus., Inc</u>, 51 F.3d at

25 1484 (citing <u>Cooper v. Bell</u>, 628 F.2d 1208, 1210 n.2 (9th Cir.

26 1980)).  The court may also look to documents "'whose contents are

27 alleged in a complaint and whose authenticity no party questions,

28 but which are not physically attached to the [plaintiff's]

1   pleading.'" <u>Sunrize Staging, Inc. v. Ovation Dev. Corp.</u>, 241 F.

2   App'x 363, 365 (9th Cir. May 18, 2007) (quoting <u>Janas v. McCracken</u>

3   <u>(In re Silicon Graphics Inc. Sec. Litig.)</u>, 183 F.3d 970, 986 (9th

4   Cir. 1999)) (alteration in original); <u>see Stone v. Writer's Guild</u>

5   <u>of Am. W., Inc.</u>, 101 F.3d 1312, 1313-14 (9th Cir. 1996).

6   **B.    <u>Standards Applicable to Pro Se Litigants</u>**

7        Where a plaintiff appears in propria persona in a civil rights

8   case, the court must construe the pleadings liberally and afford

9   the plaintiff any benefit of the doubt. <u>Karim-Panahi v. Los</u>

10  <u>Angeles Police Dep't</u>, 839 F.2d 621, 623 (9th Cir. 1988).  The rule

11  of liberal construction is "particularly important in civil rights

12  cases." <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992).

13  In giving liberal interpretation to a pro se civil rights

14  complaint, courts may not "supply essential elements of claims that

15  were not initially pled." <u>Ivey v. Bd. of Regents of the Univ. of</u>

16  <u>Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory

17  allegations of official participation in civil rights violations

18  are not sufficient to withstand a motion to dismiss." <u>Id.</u>; <u>see</u>

19  <u>also Jones v. Cmty. Redev. Agency</u>, 733 F.2d 646, 649 (9th Cir.

20  1984) (finding conclusory allegations unsupported by facts

21  insufficient to state a claim under § 1983).  "The plaintiff must

22  allege with at least some degree of particularity overt acts which

23  defendants engaged in that support the plaintiff's claim." <u>Jones</u>,

24  733 F.2d at 649 (internal quotation omitted).

25       Nevertheless, the court must give a pro se litigant leave to

26  amend his complaint "unless it determines that the pleading could

27  not possibly be cured by the allegation of other facts." <u>Lopez v.</u>

28  <u>Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting <u>Doe</u>

1   v. United States, 58 F.3d 494, 497 (9th Cir. 1995)).  Thus, before

2   a pro se civil rights complaint may be dismissed, the plaintiff

3   must be provided with a statement of the complaint's deficiencies.

4   Karim-Panahi, 839 F.2d at 623-24.  But where amendment of a pro se

5   litigant's complaint would be futile, denial of leave to amend is

6   appropriate.  See James v. Giles, 221 F.3d 1074, 1077 (9th Cir.

7   2000).

8   **C.   Stating a Claim Under 42 U.S.C. § 1983**

9        To state a claim under § 1983, the plaintiff must allege facts

10  sufficient to show (1) a person acting "under color of state law"

11  committed the conduct at issue, and (2) the conduct deprived the

12  plaintiff of some right, privilege, or immunity protected by the

13  Constitution or laws of the United States.  42 U.S.C.A. § 1983

14  (West 2010); Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th

15  Cir. 1986).

16       These guidelines apply to Defendants' Motion.

17                    **III.   DEFENDANTS' MOTION TO DISMISS**

18       All five named Defendants move to dismiss Plaintiff's

19  Complaint for failure to allege facts sufficient to state a claim.

20  (Mot. Dismiss 1, ECF No. 24.)  They contest the path Thornton has

21  chosen to question the conditions of his parole.  Defendants argue

22  that the challenge to parole conditions is not cognizable under §

23  1983 and should have been brought in a petition for writ of habeas

24  corpus.  (Id. Attach. #1 Mem. P. & A. 4-6.)  Next, they allege

25  Plaintiff has failed to plead facts illustrating they were

26  personally involved in any violation of Thornton's constitutional

27  rights.  (Id. at 6-7.)  Defendants contend that Plaintiff attempts

28  to use vicarious liability to hold them responsible for his parole

                                    7

1   conditions.  (<u>Id.</u> at 6.)  They also assert they are entitled to

2   qualified immunity for their actions.  (<u>Id.</u> at 7-8.)  Finally,

3   Defendants maintain that they are absolutely immune from liability

4   for monetary damages related to their official actions.  (<u>Id.</u> at 8-

5   9.)

6   **A.     Request for Judicial Notice**

7        Both Plaintiff and Defendants request that the Court take

8   judicial notice of several items.  Defendants ask the Court to take

9   judicial notice of the following records:

        1.   Notice of Sex Offender Registration Requirement,
             dated January 31, 2006;

        2.   Indictment for Rape, Criminal Court of Shelby
             County, Tennessee case no. 86-02052;

        3.   Judgment, Criminal Court of Shelby County,
             Tennessee, case number 86-02052;

        4.   Petition for Waiver of Trial by Jury, Criminal Court
             of Shelby County, Tennessee, case number 86-02052;
             [and]

        5.   Negotiated Plea Agreement, Criminal Court of Shelby
             County, Tennessee, case number 86-02052.

18  (Mot. Dismiss Attach. #2 Req. Judicial Notice 2, ECF No. 24.)

19  Thornton requests that the Court take judicial notice of the

20  following nine items:

        1.   Parole Conditions Dated:  November 21, 2007, June
             30, September 2, and December 17, 2008;

        2.   Parole Conditions Dated:  March 24 and July 9, 2009;

        3.   Modified Conditions of Parole Dated:  September 17
             and November 12, 2007;

        4.   Copies of MapQuest;

        5.   California Department of Corrections Face Sheet;

        6.   CDCR Parolee Interview Reports and Other Documents;

        7.   CDCR (602) Appeal to Agent Cavalin;

8

1      8.    Letter From Richard Lilly to Parole Agent Cavalin
             and Agent Shannahan; [and]
2
       9.    CDCR 602 Appeal to Supervisor Lewis.
3

4  (Opp'n Attach. #2 Req. Judicial Notice 2-3, ECF No. 46.)

5      When ruling on motions to dismiss, courts may consider matters

6  of which they take judicial notice.  Lovelace v. Software Spectrum

7  Inc., 78 F.3d 1015, 1017-18 (5th Cir. 1996) (citing Fed. R. Evid.

8  201(f)).  A fact subject to judicial notice is one that is "not

9  subject to reasonable dispute in that it is either (1) generally

10 known within the territorial jurisdiction of the trial court or (2)

11 capable of accurate and ready determination by resort to sources

12 whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

13 201(b).  "A court shall take judicial notice if requested by a

14 party and supplied with the necessary information."  Fed. R. Evid.

15 201(d).  Furthermore, judicial notice may be taken of "records of

16 state agencies and other undisputed matters of public record."

17 Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d

18 861, 866 n.1 (9th Cir. 2004) (citing Lee v. City of Los Angeles,

19 250 F.3d 668, 689 (9th Cir. 2001)).

20     **1.   Defendants' Request**

21     Although unaccompanied by a declaration authenticating the

22 documents, Defendants ask the Court to take judicial notice of the

23 Notice of Sex Offender Registration Requirement, as well as four

24 records pertaining to Thornton's 1986 Tennessee criminal case.

25 (See Mot. Dismiss Attach. #2 Req. Judicial Notice 2, ECF No. 24.)

26 Thornton has not asserted that the documents are not authentic or

27 opposed taking judicial notice of the records.

28 //

1
**a.   Notice of sex offender registration requirement**

2        The California Department of Justice provides sex offenders

3 with a notice advising them of their duty to register as a sex

4 offender pursuant to California Penal Code sections 290 and 290.01.

5 (Id. Ex. 1, at 5.)  Defendants' Request for Judicial Notice

6 includes a copy of the Notice of Sex Offender Registration

7 Requirement with Thornton's initials, a signature, and a

8 thumbprint.  (Id.)

9        Courts may take judicial notice of "the records of state

10 agencies and other undisputed matters of public record."  Disabled

11 Rights Action Comm., 375 F.3d at 866 n.1.  Here, the notice to

12 register as a sex offender is a record of the California Department

13 of Justice ("DOJ").  "The California Department of Justice is

14 clearly a state agency."  Faruk Cenap Yetek DDS v. Dental Bd. of

15 Cal., No. C09-3702, 2010 U.S. Dist. LEXIS 82529, at *6 (N.D. Cal.

16 June 22, 2010).  Accordingly, Defendants' request that the Court

17 take judicial notice of the Notice of Sex Offender Registration

18 Requirement -- 290 P.C., signed by Thornton on January 31, 2006, is

19 **GRANTED**.  (Mot. Dismiss Attach. #2 Req. Judicial Notice 2, ECF No.

20 24; id. Ex. 1, at 5.)

21
**b.   Documents relating to the Tennessee criminal case**

22        The remaining four documents that Defendants ask the Court to

23 judicially notice relate to Thornton's 1986 case in the Criminal

24 Court of Shelby County, Tennessee -- the indictment, the judgment,

25 the petition for waiver of jury trial, and the plea agreement.

26 (Mot. Dismiss Attach. #2 Req. Judicial Notice 2, ECF No. 24; id.

27 Exs. 2-5.)  A grand jury returned an indictment on April 22, 1986,

28 charging Thornton with rape in case number 86-02052.  (Id. Ex. 2,

10

at 7-8.)  The indictment is accompanied by an "affidavit of complaint" and warrant ordering Thornton's arrest.  (<u>Id.</u>)  Next, Defendants include the 1987 judgment showing that Thornton pleaded guilty to sexual battery and was sentenced to one-year confinement at the local workhouse.  (<u>Id.</u> Ex. 3, at 11.)  They also have produced a copy of a jury trial waiver requesting that the Tennessee court accept Thornton's guilty plea.  (<u>Id.</u> Ex. 4, at 13.)  Lastly, Defendants include a negotiated plea agreement signed by Thornton.  (<u>Id.</u> Ex. 5, at 15-16.)

On a motion to dismiss, a court may take judicial notice of "matters of public record."  <u>See</u> <u>Mack v. South Bay Beer Distribs., Inc.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986).  Moreover, "courts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings."  <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991).  The effect of taking judicial notice of documents filed in other courts, however, is limited.  "On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'"  <u>Lee</u>, 250 F.3d at 690 (quoting <u>South Cross Overseas Agencies v. Wah Kwong Shipping Grp. Ltd.</u>, 181 F.3d 410, 426-27 (3rd Cir. 1999)).

The records relating to Thornton's out-of-state criminal case "'[are] not subject to reasonable dispute over [their] authenticity.'"  <u>Id.</u> (quoting <u>South Cross Overseas Agencies</u>, 101 F. 3d at 427).  These documents appear to be authentic court records of the Criminal Court of Shelby County, Tennessee, and there is

11

1   nothing to suggest otherwise.  (See Mot. Dismiss Attach. #2 Req.

2   Judicial Notice Exs. 2-5, at 7-16, ECF No. 24.)  Defendants'

3   request that the Court take judicial notice of the indictment, the

4   judgment, the petition for waiver of jury trial, and the plea

5   agreement in Tennessee criminal case number 86-02052 is **GRANTED**.

6   See Lee, 250 F.3d at 690; Mack, 798 F.2d at 1282; Kramer, 937 F.2d

7   at 774.

8          **2.   Plaintiff's Request**

9          Plaintiff asks that the Court take judicial notice of nine

10   items, which are themselves composed of multiple documents.  (Opp'n

11   Attach. #2 Req. Judicial Notice 2-3, ECF No. 46.)[2]  Like the

12   Defendants, Thornton has not provided the Court with a declaration

13   establishing the authenticity of the items.  But Defendants do not

14   dispute authenticity and do not oppose Plaintiff's request for

15   judicial notice.  The Court will address related documents

16   together.

17          **a.   Parole conditions, inmate appeals, and related**

18                 **documents**

19          Plaintiff asks the Court to take judicial notice of parole

20   conditions dated November 21, 2007, and June 30, September 2, and

21   December 17, 2008.  (Id. at 2, 5-33.)  Thornton also includes

22   parole conditions dated March 24 and July 9, 2009.  (Id. at 2, 35-

23   48.)  All of the parole conditions are printed on a California

24   Department of Corrections and Rehabilitation ("CDCR") form, and

25   they are signed by Thornton, Parole Agent Cavalin, and the Parole

26   _____

27          [2] Although Plaintiff refers to these records as both
     "exhibits" and "attachments," and with both letter and number
     designations, the Court will cite to the records using the page
28   numbers assigned by the electronic case filing system ("ECF").  (See
     id. at 2-82.)

Unit Supervisor.  (Id. at 6-7, 12-13, 19-20, 26-27, 33, 35, 41-42, 48.)  Next, Plaintiff includes a Modified Condition of Parole Addendum, a notice sent to Thornton regarding Proposition 83, and the Special Condition Addendum Global Positioning System (GPS).  (Id. at 2, 50-52.)  These documents are signed by Thornton and a member of the CDCR; the notice and special addendum are printed on CDCR forms.  (Id.)

Additionally, Thornton attaches a CDCR Face Sheet, which is a log outlining Thornton's housing and employment history.  (Id. at 2, 57-58.)  This is followed by two California Penal Code section 290 registration receipts, a License and Certificate of Marriage, a Parolee Initial Interview form, and a Notification of Parolee Orientation.  (Id. at 2, 60-64.)  The parolee interview, dated April 30, 2007, is signed by Plaintiff and Parole Agent Miller.  (Id. at 63.)  Next, Thornton attaches a completed Inmate/Parolee Appeal Form ("602"), including Agent Cavalin's response at the informal level of review.  (Id. at 2, 66.)  Finally, Plaintiff submits a set of three administrative appeals, two of which include cover letters addressed to Defendants Lewis and Cavalin.  (Id. at 3, 72-81.)  The initial grievances are dated September 28, 2008, and February 3 and May 13, 2010.  (Id. at 73, 78, 81.)  The grievances relate to Thornton's claim that he has been banished from his home.  (Id. at 72-81.)

Some of the items are also attached to the Complaint, which makes them appropriate for consideration in ruling on the Defendants' Motion to Dismiss.  (Compare Opp'n Attach. #2 Req. Judicial Notice 6-12, ECF No. 46, with Compl. Attach. #1 Ex. J, at

1   1-7, ECF No. 1; <u>compare</u> Opp'n Attach. #2 Req. Judicial Notice 50-

2   51, ECF No. 46, <u>with</u> Compl. Attach. #1 Ex. C, at 1-2, ECF No. 1.)

3       As discussed previously, courts may take judicial notice of

4   records and reports of administrative bodies. <u>Lundquist</u>, 394 F.

5   Supp. 2d at 1242-43. "Public records and government documents are

6   generally considered 'not to be subject to reasonable dispute.'"

7   <u>Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue</u>

8   <u>Shield</u>, 630 F. Supp. 2d 842, 849 (S.D. Ohio 2003) (quoting <u>Jackson</u>

9   <u>v. City of Columbus</u>, 194 F.3d 737 (6th Cir. 1999)). With the

10  exception of two handwritten letters, Opp'n Attach. #2 Req.

11  Judicial Notice 72, 76, ECF No. 46, Plaintiff's documents consist

12  of records of either the State of California, the Department of

13  Corrections, or the County of San Diego. They are the proper

14  subject of judicial notice only to establish their existence or the

15  result of an administrative process; Thornton cannot rely on them

16  to establish any hearsay statements or contested facts contained in

17  the documents. <u>See</u> <u>Lee</u>, 250 F.3d at 690; <u>see also</u> <u>Lundquist</u>, 394

18  F. Supp 2d at 1242-43 (stating that courts may take judicial notice

19  of records and reports of administrative bodies).

20      The letters that accompany two of Thornton's 602 grievances

21  are not public records or government documents. (<u>See</u> Opp'n Attach.

22  #2 Req. Judicial Notice 72, 77, ECF No. 46.) Defendants do not

23  object to any of Plaintiff's requests. (<u>See</u> Reply Opp'n Mot.

24  Dismiss 1-3, ECF No. 53.) Even so, the letters are hearsay and not

25  adjudicative facts. Rule 201(a) of the Federal Rules of Evidence

26  governs only adjudicative facts. An adjudicative fact is "either

27  (1) generally known within the territorial jurisdiction of the

28  trial court or (2) capable of accurate and ready determination by

14

1    resort to sources whose accuracy cannot reasonably be questioned."

2    Fed. R. Evid. 201(b).  The Court does not take judicial notice of

3    these two letters because their content is hearsay.  For these two

4    items, Thornton's request is **DENIED**.  (Opp'n Attach. #2 Req.

5    Judicial Notice 72, 77, ECF No. 46.)  But Plaintiff's request that

6    the Court take judicial notice of the remaining items listed above

7    -- the parole conditions, the face sheet, the 602 grievances, the

8    interview report, and other documents is **GRANTED**.  (Opp'n Attach.

9    #2 Req. Judicial Notice 2-52, 56-66, 73-76, 78-81, ECF No. 46.)

10              **b.   MapQuest printout**

11       Thornton also seeks judicial notice of a map and printout from

12   the mapping website MapQuest.  (<u>Id.</u> at 54.)  The documents show

13   schools and the distance to each of them from Plaintiff's wife's

14   residence in San Marcos, California.  (<u>Id.</u>)  In general, maps are

15   "capable of accurate and ready determination by resort to sources

16   whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

17   201(b); <u>see, e.g.</u>, <u>Hays v. National Elec. Contractors Ass'n</u>, 781

18   F.2d 1321, 1323 (9th Cir. 1985) (taking judicial notice of a map to

19   show counties included in a forty mile radius).  Plaintiff's

20   request that the Court take judicial notice of the MapQuest map and

21   printout, to which Defendants have not objected, is **GRANTED**.[3]

22   (Opp'n Attach. #2 Req. Judicial Notice 54-55, ECF No. 46.)

23   //

24   //

25

26        [3] Plaintiff also describes the map as being created and sent
     by parole agents. (Opp'n Attach. #2 Req. Judicial Notice 4, ECF No.
27   46.)  The Court does not take judicial notice of the map's creator
     or that a specific person transmitted it.  The Court takes judicial
28   notice only of the map's existence and the geographical data it
     contains.

c.   **Letters to parole agents**

Plaintiff requests that this Court take judicial notice of three letters dated March 2, 2009.  (Id. at 68-70.)  The first appears to be signed by Richard Lilly and is addressed to Agent Shannahan.  (Id. at 68.)  The second letter is signed by Thornton's wife and his mother-in-law and is addressed to Agent Cavalin.  (Id. at 69.)  The third letter is signed by Lilly and is a duplicate of the letter Lilly addressed to Agent Shannahan, except that it is addressed to Agent Cavalin.  (Id. at 70.)

Courts may deny requests to take judicial notice of letters when they contain evidentiary defects.  See, e.g., Pratt v. California State Bd. of Pharmacy, 268 F. App'x 600, 603 (9th Cir. Feb. 14, 2008) (denying request to take judicial notice of a letter containing hearsay); Contreras Family Trust v. United States Dept. of Agric. Farm Service Agency, 205 F. App'x 580, 582 (9th Cir. Nov. 13, 2006) (finding that district court did not abuse its discretion when denying a request to take judicial notice of an unauthenticated letter).  These letters are hearsay and have not been authenticated.  Consequently, Plaintiff's request that the Court take judicial notice of the two letters signed by Lilly and the letter signed by Thornton's wife and mother-in-law is **DENIED**. (Opp'n Attach. #2 Req. Judicial Notice 68-70, ECF No. 46.)

B.   **Whether Plaintiff's Claims Are Cognizable Under § 1983**

Thornton argues that the conditions of his parole violate his constitutional rights.  (See Compl. 3-7, ECF No. 1.)  His first claim challenges the parole condition that prohibits him from "liv[ing] at my home with my wife because of provisions of Proposition 83 . . . ."  (See id. at 3.)  Plaintiff attaches to his

Complaint a forty-five-day notice sent to him from the CDCR,
informing him that he had been given a parole condition requiring
him to obey all laws, including Proposition 83, the Sexual Predator
Punishment and Control Act ("Jessica's Law").  (Id. Attach. #1 Ex.
C, at 8.)  The notice states, "Jessica's Law means that if you have
to sign up as a sex offender, you can not live within 2000 feet of
a park or school.  Also, PC 3003(g) says you cannot live within
one-half-mile of a school."  (Id.)  It further states, "This letter
is your notice to obey the law, and to tell you that your 45-day
period starts on 9-17-07[.]"  (Id.)  Jessica's Law was applied to
Plaintiff because of his 1986 Tennessee conviction for sexual
battery.  (See Compl. 3, ECF No. 1; id. Attach. #1 Ex. H, at 31.)

In Thornton's second claim, Plaintiff asserts that on November
21, 2007, he was assigned to a GPS unit and a sex offender unit of
parole.  (Id. at 4.)  Thornton attaches to his Complaint a notice,
signed by Plaintiff, instructing him that as of November 21, 2007,
he must participate in Global Positioning System ("GPS")
monitoring.  (Id. Attach. #1 Ex. E, at 18.)  He also attaches his
Special Conditions of Parole form, which requires that he register
as a sex offender.  (Id. Ex. J, at 41.)  Plaintiff's second claim
is that these overbroad parole conditions -- electronic monitoring
and the registration requirement -- violate his civil rights.  (See
Compl. 4, ECF No. 1.)

Finally, Thornton's third claim is directed at the disparate
treatment of him and Richard Lilly, a parolee who was allowed to
live in Plaintiff's wife's residence even though Thornton was not.
(Id. at 4-5.)  Plaintiff asserts that he and Lilly were in the same
sex offender parole unit.  (Id. at 5.)  Thornton submitted numerous

administrative grievances complaining of the discrimination against
him. (Id. Attach. #1 Ex. D, at 11-16, Ex. F, at 21-24.) He
contends that the parole condition requiring him to obey Jessica's
Law is being applied in a discriminatory manner. (Compl. 4-5, ECF
No. 1.)

Defendants argue that Plaintiff is challenging the fact or
duration of his confinement. (Mot. Dismiss Attach. #1 Mem. P. & A.
5, ECF No. 24.) Therefore, Thornton's claims should have been
brought in a petition for writ of habeas corpus instead of a civil
rights complaint. (Id.) To support their contention, Defendants
rely on the Seventh Circuit's reasoning in Williams v. Wisconsin,
336 F.3d 576 (7th Cir. 2003). (Mot. Dismiss Attach. #1 Mem. P. &
A. 5-6, ECF No. 24.) There, the court held that the sole remedy
for a parolee who challenges the conditions of parole in federal
court is a writ of habeas corpus. Williams, 336 F.3d at 580.
Defendants conclude, "Plaintiff's challenges to his parole
conditions are not cognizable under 42 U.S.C. section 1983 because
they are considered part of his sentence." (Motion Dismiss Attach.
#1 Mem. P. & A. 6, ECF No. 24.)

In his Opposition, Thornton argues that he is not challenging
his parole conditions. (Opp'n Attach. #1 Mem. P. & A. 2, ECF No.
46.) Rather, Plaintiff asserts he is challenging the denial of his
constitutional rights and the discrimination being applied to him.
(Id.) Thornton explains that his claims are "very much cognizable
under 42 U.S.C. § 1983 and should not be brought by any other
means." (Id.)

In response, Defendants reiterate that challenges to parole
conditions must be brought by petition for writ of habeas corpus,

18

1    not a complaint under § 1983.  (Reply 2, ECF No. 53.)  "[Plaintiff]
2    claims he is challenging the denial of his constitutional rights,
3    not his parole conditions.  But the gravamen of Plaintiff's entire
4    Complaint is that his parole conditions violate his constitutional
5    rights."  (Id.)  Defendants state that Thornton's requested relief
6    -- an injunction to prohibit them from applying "any type of sex
7    offender parole conditions" to him -- further indicates that
8    Plaintiff's claims challenge his parole conditions and should be
9    raised in a habeas petition.  (Id. (quoting Compl. 7, ECF No. 1).)
10          It is well-established that when a state prisoner challenges
11   the legality or duration of his confinement, or raises
12   constitutional challenges that could entitle him to earlier
13   release, his exclusive federal remedy is a writ of habeas corpus.[4]
14   Heck v. Humphrey, 512 U.S. 477, 481 (1994) (citing Preiser v.
15   Rodriquez, 411 U.S. 475, 488-90 (1973)); see also Wilkinson v.
16   Dotson, 544 U.S. at 78.  The Supreme Court has emphasized that only
17   habeas corpus jurisdiction is available to those attempting to
18   "invalidate the duration of their confinement -- either directly
19   through an injunction compelling speedier release or indirectly
20   through a judicial determination that necessarily implies the
21   unlawfulness of the State's custody."  Dotson, 544 U.S. at 81
22   (emphasis added).  "[A] state prisoner's § 1983 action is
23   barred . . . no matter the relief sought (damages or equitable

24   _____

25          [4] Although Thornton was incarcerated at the time he filed his
     Complaint, (Compl. 1, ECF No. 1), it is unclear whether his
26   incarceration was the result of a violation of the parole
     conditions he complains of here.  If so, Plaintiff's challenge will
27   result in a judgment that necessarily implies the invalidity of his
     conviction or sentence.  For that reason, a habeas petition would
28   be the only means available for Thornton's constitutional challenge
     to his conditions of parole, and his § 1983 Complaint would be
     dismissed.  See Wilkinson v. Dotson, 544 U.S. 74, 81-83 (2005).

19

1   relief), no matter the target of the prisoner's suit . . . if

2   success in that action would necessarily demonstrate the invalidity

3   of confinement or its duration." Id. at 81-82.

4        In Jones v. Cunningham, 371 U.S. 236 (1963), the Supreme Court

5   recognized that parole conditions can "significantly restrain [the

6   parolee's] liberty;" consequently, Jones was "in custody," and a

7   habeas corpus petition was the appropriate vehicle to test the

8   legality of his sentence.  See id. at 242-43.

9        While petitioner's parole releases him from immediate
         physical imprisonment, it imposes conditions which
10       significantly confine and restrain his freedom; this is
         enough to keep him in the 'custody' of the members of the
11       . . . Parole Board within the meaning of the habeas
         corpus statute . . . .

12

13  Id.

14       Ten years after Jones, the Supreme Court reaffirmed the case's

15  holding stating, "In 1963, the Court held that a prisoner released

16  on parole from immediate physical confinement was nonetheless

17  sufficiently restrained in his freedom as to be in custody for

18  purposes of federal habeas corpus." Preiser v. Rodriquez, 411 U.S.

19  475, 486 n.7 (1973) (citing Jones v. Cunningham, 371 U.S. 236).

20  Preiser described Jones as "no more than a logical extension of the

21  traditional meaning and purpose of habeas corpus -- to effect

22  release from illegal custody." Id.  As the Court explained,

23  "[R]ecent cases have established that habeas relief is not limited

24  to immediate release from illegal custody, but that the writ is

25  available as well to attack future confinement and obtain future

26  releases." Id. at 487; see also Braden v. 30th Judicial Circuit

27  Court of Ky., 410 U.S. 484 (1973)); Carafas v. LaValle, 391 U.S.

28  234, 239 (1968); Walker v. Wainright, 390 U.S. 335 (1968).

1    Following this reasoning, courts in the Ninth Circuit have

2  found that parolees and probationers are "in custody" if there are

3  restraints on their freedom that are not imposed on the regular

4  public.  See, e.g., Goldyn v. Hayes, 444 F.3d 1062, 1063 n.2 (9th

5  Cir. 2006) (discussing precedents holding that the person is "in

6  custody" if "the legal disability in question somehow limits the

7  putative habeas petitioner's movement[]"); Williamson v. Gregoire,

8  151 F.3d 1180, 1182-83 (9th Cir. 1998) (determining challenge to

9  conviction while on parole); see also Cordell v. Tilton, 515 F.

10 Supp. 2d 1114, 1133 (S.D. Cal. 2007) (report & recommendation).

11    In Williamson v. Gregoire, 151 F.3d at 1183, the court

12 explained the analysis:

13         Thus, the boundary that limits the "in custody"
           requirement is the line between a "restraint on liberty"
14         and a "collateral consequence of a conviction." . . .

15              . . . .

16         The precedents that have found a restraint on
           liberty rely heavily on the notion of a physical sense of
17         liberty -- that is, whether the legal disability in
           question somehow limits the putative habeas petitioner's
18         movement.  The Supreme Court justified extending habeas
           corpus to aliens denied entry into the United States by
19         explaining the denial of entry as an impingement on
           movement.  And the Court relied on a similar rationale to
20         explain why a parolee or convict released on his own
           recognizance is "in custody."  This circuit similarly
21         explained that mandatory attendance at an alcohol
           rehabilitation program satisfies the "in custody"
22         requirement because it requires the petitioner's
           "physical presence at a particular place."

23

24 Id. (internal citations omitted).  The Ninth Circuit concluded that

25 the Washington state law requirement that sex offenders register

26 with the county sheriff and notify the sheriff of any change of

27 residence did not place Williamson "in custody" for purposes of

28 federal habeas corpus.  Id. at 1181, 1184-85.  The court noted that

the Washington statutes did not restrict movement.  <u>Id.</u> at 1184.
"[T]he law does not specify any place in Washington or anywhere
else where Williamson may not go. . . .  Williamson cannot say that
there is anywhere that the sex offender law prevents him from
going."  <u>Id.</u>  Soon after <u>Williamson</u>, the Ninth Circuit held that
the requirement under California law that sex offenders register
annually with law enforcement authorities was insufficient to place
them "in custody" and permit them to invoke federal habeas corpus
jurisdiction.  <u>Henry v. Lungren</u>, 164 F.3d 1240, 1241-42 (9th Cir.
1999).

     The conditions of parole challenged by Thornton restrain his
movement.  According to Plaintiff, his parole conditions did not
permit him to return to his home and live with his wife.  (Compl.
3, ECF No. 1.)  He could not live within one-half mile of a school
or 2000 feet of a park.  (<u>Id.</u> at 8.)  The limitation on Thornton's
movement is a significant restraint on his physical liberty and
places him "in custody."  Thornton's challenge to his parole
conditions falls within the recognized scope of federal habeas
corpus relief.

     This conclusion is consistent with a more recent case, <u>Wilson
v. Belleque</u>, 554 F.3d 816, 822 (9th Cir. 2009).  There, court held
that Wilson was "in custody" within the meaning of § 2241 "where
the sovereign seeking to prosecute a petitioner [the State of
Oregon] is currently detaining the petitioner based on convictions
or charges not being challenged."  <u>Id.</u>  <u>Wilson</u> had filed a petition
for habeas corpus relief and argued that his Fifth Amendment right
against double jeopardy barred retrying him on lesser-included
offenses.  <u>Id.</u> at 820-21.  Here, regardless of the basis of

1   Thornton's current state custody, his federal suit may proceed

2   under § 2254.  It is not clear, however, that a habeas corpus

3   petition challenging conditions of parole is a parolee's only

4   avenue of relief.  See Cordell, 515 F. Supp. 2d at 1131-32 (report

5   & recommendation).  Thornton's case raises the issue of whether a

6   parole condition limiting where a parolee may live can be

7   challenged in a § 1983 action.

8        The Seventh Circuit still remains the only circuit court to

9   directly address whether habeas corpus is the exclusive means to

10  challenge parole conditions.  In Drollinger v. Milligan, 552 F.2d

11  1220 (7th Cir. 1977), one of the plaintiffs was challenging several

12  of the conditions of her probation, including one "restrict[ing]

13  her ability to share her living quarters with another person . . .

14  ."  The court held that her § 1983 complaint challenging the

15  conditions of probation must be brought as a petition for habeas

16  corpus.  Id. at 1225.  It acknowledged that probation is less

17  confining than incarceration, which blurred the distinction between

18  the fact of confinement and conditions of confinement.  Id.

19  Traditionally, the fact or duration of confinement is challenged by

20  writ of habeas corpus, but conditions of prison life are challenged

21  by civil rights complaints.  See id. at 1224.  Nonetheless, the

22  court stated, "The elimination or substitution, for example, of one

23  of the conditions of [Plaintiff's] probation would free her

24  substantially from her confinement; figuratively speaking, one of

25  the 'bars' would be removed from her cell."  Id.; see also,

26  Cordell, 515 F. Supp. 2d at 1132 (report and recommendation).

27       Sixteen years after Drollinger, the Seventh Circuit reaffirmed

28  its holding.  Williams v. Wisconsin, 336 F.3d 576 (7th Cir. 2003).

1   In <u>Williams</u>, the parolee brought a § 1983 complaint challenging a

2   parole condition banning international travel.   <u>Id.</u> at 579.

3   Relying on <u>Drollinger</u>, the court held that the parole conditions

4   "'define the perimeters of [the parolee or probationer's]

5   confinement.'"   <u>Id.</u> at 580 (quoting <u>Drollinger</u>, 552 F.2d at 1224).

6   The court concluded that the plaintiff should have brought a habeas

7   corpus petition rather than a civil rights complaint.   <u>Id.</u>

8        This Court previously addressed this question in <u>Cordell v.</u>

9   <u>Tilton</u>, 515 F. Supp. 2d at 1132-33.   In <u>Cordell</u>, a parolee brought

10   three claims under § 1983, two of which challenged conditions

11   placed on him while on parole.   <u>Cordell</u>, 515 F. Supp. 2d at 1132

12   (report & recommendation).   One of the conditions prohibited the

13   plaintiff from entering Orange County, which he argued effectively

14   banished him from his own residence, in violation of his freedom of

15   association.   <u>Id.</u>   The plaintiff's challenges to the conditions of

16   his parole were not cognizable under § 1983.   <u>Id.</u> at 1132-33.

17   "These claims force the Court to rule on the validity of the

18   restrictions placed on Cordell by the CDC as part of his sentence,

19   which can only properly be done in a habeas proceeding."   <u>Id.</u>

20   (citation omitted).

21        The Ninth Circuit has not addressed whether <u>Heck v. Humphrey</u>

22   prevents a parolee from preemptively challenging conditions of

23   parole in a § 1983 complaint.   <u>See id.</u> at 1132.   The question

24   remains unsettled among the district courts.   <u>Compare</u> <u>Ford v.</u>

25   <u>Washington</u>, No. 06-CV-1455-BR, 2007 U.S. Dist. LEXIS 41232, at *12

26   (D. Or. June 1, 2007) (stating parole conditions may be challenged

27   under § 1983), <u>and</u> <u>Yahweh v. U.S. Parole Comm'n</u>, 158 F. Supp. 2d

28   1332, 1340 (S.D. Fla. 2001) (finding that plaintiffs may challenge

parole conditions under either § 2254 or § 1983), with Moore v. Schwarzenegger, EDCV 09-1355, 2010 U.S. Dist. LEXIS 67461, at *8 (C.D. Cal. May 28, 2010) (noting that plaintiff's challenge of a parole condition restricting international travel was improperly brought under § 1983, and the claim should be dismissed without prejudice rather than converted to a claim for habeas corpus relief), and Moreno v. California, 25 F. Supp. 2d 1060, 1063 (N.D. Cal. 1998) (holding that challenges to conditions of parole are not cognizable under § 1983); see also Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir. 1995) ("When the intent to bring a habeas petition is not clear, however, the district court should not convert a defective section 1983 claim into a habeas petition.").

The Supreme Court has not "recognized habeas as the sole remedy, or even an available one, where the relief sought would 'neither terminat[e] custody, accelerat[e] the future date of release from custody, nor reduc[e] the level of custody." Skinner v. Switzer, __ U.S. __,  131 S. Ct. 1289, 1299 (2011) (quoting Dotson, 544 U.S. at 86 (Scalia, J., concurring)) (alterations in original).  The Court explained that under existing case law, when a judgment in favor of the plaintiff would "necessarily imply" the invalidity of his conviction or sentence, the plaintiff may not proceed under § 1983.  Id. at 1298-99 (citing Dotson, 544 U.S. at 82; Heck, 512 U.S. at 487).

The parole conditions restricting where Thornton may live should be considered part of his sentence.  See Cordell, 515 F. Supp. at 1132 (report & recommendation); see also, Cordell, 515 F. Supp. at 1121-22 (order adopting report & recommendation).  The

1  claims in Plaintiff's Complaint will require that the Court

2  determine the validity of the conditions placed on him as part of

3  his previous sentence.   A judgment in Plaintiff's favor would

4  "necessarily imply" the invalidity of his sentence.   See Skinner,

5  ___ U.S. at ___, 131 S. Ct. at 1298-99 (citing Nelson v. Campbell,

6  541 U.S. 637, 647 (2004)).   Because each of Plaintiff's claims

7  seeks relief that would free him from the custody of the California

8  Parole Board, habeas corpus is the traditional and appropriate

9  remedy.   See Jones v. Cunningham, 371 U.S. at 243.

10       Whether habeas relief is available to challenge conditions of

11  parole and whether it should be the parolee's sole federal remedy

12  raise overlapping questions.   In Preiser, the Court explained the

13  dilemma.

14           The broad language of § 1983, however, is not
         conclusive of the issue before us.   The statute is a
15           general one, and, despite the literal applicability of
         its terms, the question remains whether the specific
16           federal habeas corpus statute, explicitly and
         historically designed to provide the means for a state
17           prisoner to attack the validity of his confinement, must
         be understood to be the exclusive remedy available in a
18           situation like this where it so clearly applies.

19  Preiser, 411 U.S. at 489.   Habeas corpus jurisdiction should be the

20  exclusive vehicle for Thornton's challenge.   First, "[t]he broad,

21  general terms of section 1983 must necessarily yield to the

22  narrower terms of the habeas statute; limitations contained within

23  the more specific statute also limit the availability of remedies

24  under the more general statute."   Hanson v. Circuit Ct. of First

25  Judicial Circuit, 591 F.2d 404, 410 (7th Cir. 1979).   For example,

26  if Thornton is "in custody" so that he can bring a habeas petition

27  under § 2254, he must comply with the habeas statute of

28

1    limitations.   See Ospina v. United States, 386 F.3d 750, 752 (6th

2    Cir. 2004)(discussing § 2255).

3         Next, considerations of federal-state comity support this

4    conclusion.   See id. at 490.

5             [T]he reason why only habeas corpus can be used to
              challenge a state prisoner's underlying conviction is the
6             strong policy requiring exhaustion of state remedies
              . . . to avoid the unnecessary friction between the
7             federal and state court systems that would result if a
              lower federal court upset a state court conviction
8             without first giving the state court system an
              opportunity to correct its own constitutional errors.

9

10   Id.  California courts have an important interest in determining

11   whether Thornton's challenge to the parole restrictions mandated by

12   California's sex offender laws pass constitutional muster.   The

13   exhaustion requirement of the habeas statutes promotes that

14   interest.   These policy considerations reinforce the conclusion

15   that habeas relief should be the sole federal remedy available to

16   Thornton.   Accordingly, Defendants' Motion to Dismiss counts one,

17   two, and three is **GRANTED**.

18        Although Thornton may not pursue his claims pursuant to §

19   1983, he should be free to do so in a habeas corpus petition.   See

20   Trimble, 49 F.3d at 586.   When an action is barred by Heck, it

21   should be dismissed without prejudice for failure to state a claim.

22   Id.  Thornton's claims in counts one, two, and three are therefore

23   dismissed without prejudice to bringing a habeas corpus petition.

24   **C.   <u>Failure to Allege the Personal Involvement of Defendants</u>**

25        Even if Plaintiff's allegations are cognizable under § 1983,

26   they nonetheless fail to state a claim upon which relief may be

27   granted.   Defendants Schwarzenegger, Cate, Lewis, Cavalin, and

28   Joseph alternatively argue that the Complaint should be dismissed

1  because Thornton failed to allege their personal involvement in the

2  purported constitutional violation or a causal connection between

3  any wrongful conduct and the deprivation.  (Mot. Dismiss Attach. #1

4  Mem. P. & A. 6, ECF No. 24.)  Defendants contend that Thornton's

5  allegations "simply state in what capacity the defendants are

6  employed.  (Id. at 7.)  They further argue, "[Plaintiff] seems to

7  be attempting to hold [Defendants] vicariously liable for

8  conditions of parole placed on him before he was released from

9  prison."  (Id.)  Therefore, Defendants contend, Thornton's claim is

10  inadequate to establish liability.  (Id.)

11      In response, Plaintiff asserts he has stated a claim against

12  the Defendants, and the Court must construe his Complaint in the

13  light most favorable to him.  (Opp'n Attach. #1 Mem. P. & A. 2, ECF

14  No. 46.)  He argues that the "parole agents did imping[e] on [his]

15  constitutionally protected rights."  (Id. at 3.)  Plaintiff claims

16  the Constitution and the California Constitution allow him to live

17  at his wife's residence.  (Id. at 3-6.)  Thornton relies on cases

18  that struck down conditions that too broadly restricted

19  probationers' and parolees' "important rights."  (Id. at 4-5.)

20  Plaintiff does not otherwise address Defendants' argument that he

21  failed to allege their personal involvement.

22      "A person 'subjects' another to the deprivation of a

23  constitutional right . . . if he does an affirmative act,

24  participates in another's affirmative act, or omits to perform an

25  act which he is legally required to do that causes the deprivation

26  of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743

27  (9th Cir. 1978) (citing Sims v. Adams, 537 F.2d 829 (5th Cir.

28  1976)).  To state a claim for monetary damages under § 1983, a

litigant must allege that each defendant committed some act, or
failed to act in some way, which caused the plaintiff's injury.
See Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) (citing
Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988)).  "The
inquiry into causation must be individualized and focus on the
duties and responsibilities of each individual defendant whose acts
or omissions are alleged to have caused a constitutional
deprivation."  Leer, 844 F.2d at 633 (citations omitted).
Moreover, respondeat superior or vicarious liability is not
available in a civil rights action, absent a state law that
authorizes its application.  Redman v. County of San Diego, 942
F.2d 1435, 1446 (9th Cir. 1991); see also Samonte v. Bauman, 264 F.
App'x 634, 636 (9th Cir. 2008) (finding that governor was not
liable merely because of her position).

In his Complaint, Thornton names Arnold Schwarzenegger, former
governor of California, because he "has control of state laws and
enforcement of laws." (Compl. 2, ECF No. 1.)  Plaintiff states
that Matthew Cate, secretary of the California Department of
Corrections, is liable because he is director of the department and
has "control over [CDCR] policies and procedures." (Id.)  Thornton
sues "John Doe" Lewis, a parole unit supervisor, because he "is in
control over the parole unit in Escondido, California." (Id.)
Thornton also names Mark Joseph, a parole agent, who acted under
color of law "as a parole agent." (Id.)  Finally, he names
Christine Cavalin, another parole agent, because she "was acting
under color of law as [his] parole agent of record." (Id.)

Although each Defendant is sued in his or her individual
capacity, Plaintiff does not include individualized allegations

describing the specific acts of each Defendant.  (Compl. 3-5, ECF
No. 1.)   In count one, Plaintiff alleges that before he was
released from custody for a previous parole violation, he received
a notice informing him that he would not be allowed to live at his
wife's residence because of Proposition 83.  (Id. at 3.)   On that
basis, he claims that his rights to due process, freedom of
association, and to be free from cruel and unusual punishment were
violated.  (Id.)

In count two, Thornton alleges that he was assigned to a sex
offender and GPS units of parole.  (Id. at 4.)   He states that he
was given overbroad parole conditions that were unrelated to his
California criminal history.  (Id.)   Plaintiff alleges that he was
assigned to Parole Agent Christine Cavalin.  (Id.)   Because of his
parole conditions and parole unit assignments, Thornton claims that
his rights to be free from cruel and unusual punishment, due
process, and "interest of liberty" were violated.  (Id.)   He does
not identify any other Defendant in count two.

Finally, Thornton contends in count three that he was told he
could not live at his wife's residence because of Proposition 83
and California Penal Code section 3003.5.  (Id. at 5.)   Yet,
another member of the same sex offender unit of parole was allowed
to live with Thornton's wife at her residence.  (Id. at 5.)
Plaintiff asserts this constitutes unconstitutional discrimination.
(Id. at 4-5.)   Count three does not identify the Defendant charged
with specific acts of discrimination.  (See id.)

Nonetheless, the Court must "construe the pleadings liberally
and afford the plaintiff any benefit of the doubt." Karim-Panahi,
839 F.2d at 623.  When ruling on motions to dismiss, the Court is

10cv01583 RBB

aided in its determination by documents the plaintiff attaches to
the complaint.  Amfac Mortg. Corp. v. Arizona Mall of Tempe, Inc.,
583 F.2d 426, 430 (9th Cir. 1978); see Schneider, 151 F.3d at 1197
n.1 (stating that the face of the complaint, and the exhibits
attached to it, "control the Rule 12(b)(6) inquiry[]").  "The court
is not limited by the mere allegations contained in the complaint .
. . .  These [attached] documents, as part of the complaint, are
properly a part of the court's review as to whether plaintiff can
prove any set of facts in support of its claim . . . ."  Amfac
Mortg. Corp., 583 F.2d at 429; see also Quinn v. Ocwen Federal
Bank, 470 F.3d 1240, 1244 (8th Cir. 2006) (finding that the court
may use exhibits attached to the complaint for "all purposes").

     Although Thornton's allegations are scant, when construed with
the exhibits attached to the Complaint and items of which the Court
takes judicial notice, they may be sufficient to survive the Motion
to Dismiss.  See Amfac Mortg. Corp., 583 F.2d at 429-30 (reviewing
documents attached to the complaint when determining the
sufficiency of a claim); Marshall v. Burden, No. 5:09-cv-00128-BSM-
JJV, 2009 U.S. Dist. LEXIS 125174, at *4 (E.D. Ark. Feb. 22, 2010)
(considering inmate grievances attached to pleadings to give pro se
plaintiff the "full benefit of a liberal construction").
Nonetheless, when liberally construing the Complaint, the Court
does not "supply essential elements of a claim that were not
initially pled."  Ivey, 673 F.2d at 268.

     **1.   Count One**

     Thornton, currently housed at the California Correctional
Institution at Tehachapi, alleges that before his 2007 release from
a parole violation, he received a notice informing him he could not

1   live at his wife's residence.  (Compl. 1, 3, ECF No. 1.)  The

2   Complaint does not identify who Plaintiff believes is responsible

3   for the claimed constitutional violations.  Notably, Thornton does

4   not assert that he is precluded from establishing a home and living

5   with his wife at some other location.  (Id.)  Even if the Court

6   assumes that the imposition of the restrictions on where Plaintiff

7   may live is the basis for the violations, Plaintiff's allegations

8   are insufficient.  The notice is signed by James Tilton, and count

9   one does not state that any of the named Defendants are responsible

10  for the parole restrictions.  (See Compl. Attach. #1 Ex. C, at 1,

11  ECF No. 1.)

12      Plaintiff names Defendants Schwarzenegger, Cate, and Lewis

13  because they hold supervisory positions as the governor, secretary

14  of the department of corrections, or supervisor of the parole unit

15  to which Plaintiff was assigned.  (Compl. 2, ECF No. 1.)  But §

16  1983 of the Civil Rights Act does not authorize a plaintiff to

17  bring a cause of action based on respondeat superior liability.

18  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978) ("[T]he

19  fact that Congress did specifically provide that A's tort became

20  B's liability if B 'caused' A to subject another to a tort suggests

21  that Congress did not intend § 1983 liability to attach where such

22  causation was absent."); see also Motley v. Parks, 432 F.3d 1072,

23  1081 (9th Cir. 2005).  State officials are subject to suit in their

24  personal capacities if "they play an affirmative part in the

25  alleged deprivation of constitutional rights."  King v. Atiyeh, 814

26  F.2d 565, 568 (9th Cir. 1987); see also Redman, 942 F.2d at 1446.

27      Thornton's Complaint does not describe the conduct he

28  attributes to Parole Agents Joseph and Cavalin.  His Complaint must

32

1  "link each defendant to specific conduct." <u>See</u> <u>Karim-Panahi</u>, 839

2  F.2d at 625 n.3.  Plaintiff attaches several inmate grievances to

3  the Complaint.  (<u>See</u> Compl. Attach. #1 Ex. D, at 2-3, 5-6, Ex. F,

4  at 1-3, ECF No. 1.)  In his inmate appeals, Thornton identifies who

5  was enforcing the parole conditions prohibiting him from living in

6  his wife's residence.  (<u>Id.</u>)  In one appeal he wrote, "When

7  released from parole on Nov. 9, 2007, was told by Agent Joseph that

8  I could not live at my wife's house . . . ."  (<u>Id.</u> Ex. A, at 2.)

9  Again, in a subsequent appeal, Plaintiff explained he was told by

10 Joseph that he could no longer live with his wife at her residence

11 and that Thornton had been assigned to Parole Agent Cavalin of the

12 "Inland GPS Unit."  (<u>Id.</u> Ex. F, at 21.)  In another grievance,

13 Plaintiff stated that Cavalin imposed the same conditions on him,

14 over his objection, after he was transferred to her supervision.

15 (<u>Id.</u>; <u>see also</u> <u>id.</u> Ex. A, at 2.)

16     The allegations in the Complaint, the contents of the

17 documents attached to it, and records judicially noticed fail to

18 show that Defendants Schwarzenegger, Cate, or Lewis played a part

19 in the alleged deprivations.  (<u>See generally</u> Compl. 1-7, ECF No. 1;

20 <u>id.</u> Attach. #1 Exs. A-K; Opp'n Attach. #2 Req. Judicial Notice 2-3,

21 ECF No. 46.)  "[State officials and] supervising officers can be

22 held liable under section 1983 'only if they play an affirmative

23 part in the alleged deprivation of constitutional rights.'"  <u>Graves</u>

24 <u>v. City of Coeur D'Alene</u>, 339 F.3d 828, 848 (9th Cir. 2003)

25 (quoting another source), <u>abrogated in part on other grounds by</u>

26 <u>Hiibel v. Sixth Judicial Dist. Ct. of Nev.</u>, 542 U.S. 177 (2004).

27 Defendants' Motion to Dismiss count one based on Thornton's failure

28 to allege the personal involvement of Schwarzenegger, Cate, and

33

Lewis is **GRANTED**.  Conversely, the allegations in the Complaint, supplemented by the attachments to it, are sufficient to state a claim against Defendants Joseph and Cavalin.  As a result, their Motion to Dismiss is **DENIED**.

    **2.  Count Two**

Thornton alleges he was assigned to a GPS parole unit, given overbroad parole conditions, and was assigned to Parole Agent Cavalin's sex offender unit.  (Compl. 4, ECF No. 1.)  Plaintiff maintains that this violated his rights to be free from cruel and unusual punishment and to due process.  (Id.)

Assuming the assignment to these parole units or the imposition of overbroad parole conditions violated Thornton's constitutional rights, count two fails to allege which Defendant made the assignments or imposed the conditions.  Even so, the exhibits to the Complaint and the judicially noticed items show that Thornton contends that Defendants Joseph and Cavalin are responsible for his parole assignments and conditions.  (See Compl. 4, ECF No. 1.)

Plaintiff alleges that Defendant Cavalin was his parole agent of record.  (Id.)  Her name and signature appear on several attachments to the Complaint and in documents judicially noticed.  (See Compl. Attach. #1 Exs. A at 2, B at 6, E at 19, G at 26, J at 36-42, K at 44-50; Opp'n Attach. #2 Req. Judicial Notice 5-48, 52, 66, 69-70, 81.)  In the Complaint, Plaintiff does not make any allegations against Defendant Joseph.  Nevertheless, attachments to the Complaint contain statements that Joseph was responsible for imposing a residency restriction on Thornton.  (See Compl. Attach. #1 Exs. A, at 2, Ex. F, at 21.)

Thornton's assertions against Defendants Schwarzenegger, Cate, and Lewis are deficient.  A plaintiff may not bring a civil rights claim based on respondeat superior liability.  <u>Monell</u>, 436 U.S. at 692.  To the extent Thornton wishes to hold defendants Schwarzenegger, Cate, and Lewis liable for the violations he alleges in count two, he must show that they played an affirmative part in any violation.  <u>See King</u>, 814 F.2d at 568.  There are no facts included in the Complaint, the attachments, or items judicially noticed showing the involvement of the supervisory Defendants.  (<u>See generally</u> Compl. 1-7, ECF No. 1; <u>id.</u> Attach. #1 Exs. A-K; Opp'n Attach. #2 Req. Judicial Notice 1-82, ECF No. 46.) Consequently, Plaintiff has failed to state a claim against Defendants Schwarzenegger, Cate, and Lewis in count two, and their Motion to Dismiss on this basis is **GRANTED**.  The Motion to Dismiss count two against Defendants Cavalin and Joseph is **DENIED**.

### 3.   Count Three

Thornton claims he was banished from his home because living there would violate Proposition 83 and California Penal Code section 3003.5.  (Compl. 5, ECF No. 1.)  According to Plaintiff, Richard Lilly, a parolee in the same parole unit as Thornton, was allowed to live with Thornton's estranged wife in the same residence Thornton was banned from.  (<u>Id.</u> at 4-5.)  Plaintiff claims that he was subjected to unconstitutional discrimination. (<u>Id.</u>)

On its face, Count three lacks allegations specifying who was responsible for the parole conditions preventing Thornton from living at his wife's residence and allowing Lilly to do so.  (<u>See id.</u>)  Unlike counts one and two, however, the attachments provide

1   no additional facts supporting count three.  (See, e.g., Compl.

2   Attach. #1 Ex. D, at 12-13.)  On the contrary, in an inmate

3   grievance submitted on May 13, 2010, Thornton stated that Richard

4   Lilly was assigned to Parole Agent Shannahan of the Inland GPS

5   Unit.

6       Although Plaintiff has alleged that Cavalin and Joseph engaged

7   in some conduct related to his claim in count three, Thornton must

8   also allege enough facts to state a claim against them.  See Fed.

9   R. Civ. P. 12(b)(6).  After reviewing the Complaint, the materials

10  attached to the Complaint, as well as the materials of which the

11  Court takes judicial notice, Thornton has not included facts

12  sufficient to allege the involvement of Defendants Cavalin and

13  Joseph in the purported discrimination.  (See Compl. Attach. #1 Ex.

14  D, at 2-3, 5-6, Ex. F, at 1-3, ECF No. 1.)  Plaintiff contends that

15  Joseph told him he could not live in the residence, and Cavalin

16  imposed the same condition on him despite his objections.  (Compl.

17  Attach. #1 Ex. A, at 2, Ex. F, at 21, ECF No. 1.)  But Plaintiff

18  presents no facts demonstrating that Defendants Joseph or Cavalin

19  had control over, or were responsible for, the terms of Lilly's

20  parole.  Without more, the allegations are insufficient to support

21  Thornton's claim against Cavalin and Joseph in count three.  (See

22  Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736, 740 (9th

23  Cir. 2000) ("To succeed on a § 1983 equal protection claim, the

24  plaintiffs must prove that the defendants acted in a discriminatory

25  manner and that the discrimination was intentional.")

26      Similarly, as to Defendants Schwarzenegger, Cate, and Lewis,

27  Thornton fails to allege facts demonstrating their personal

28  involvement in any discrimination.  Neither the Complaint, its

36

exhibits, nor the judicially noticed materials provide any facts related to these supervisory Defendants' conduct.  (See generally Compl. 3-5, ECF No. 1; id. Attach. #1 Exs. A-K; Opp'n Attach. #2 Req. Judicial Notice 1-82, ECF No. 46.)  To state a claim, Plaintiff must allege that they played an affirmative part in the violation.  See King, 814 F.2d at 568.  Thornton has failed to include any claims directed at the Defendants.  Accordingly, the Motion to Dismiss Thornton's claims in count three against each of the Defendants is **GRANTED.**

**D.   Qualified Immunity**

Defendants argue that they are entitled to qualified immunity because they did not violate Plaintiff's constitutional rights. (See Mot. Dismiss Compl. Attach. #1 Mem. P. & A. 7-8, ECF No. 24.) "[E]ven if any of Defendants' actions could somehow be construed as a violation of Plaintiff's constitutional rights, such rights were not clearly established, and Defendants would not have been on notice that they were acting unlawfully."  (Id. at 8.)

In response, Plaintiff argues that the Complaint "clearly shows a violation of his constitutional rights." (Opp'n Attach. #1 Mem. P. & A. 6, ECF No. 46.)  He quotes from the First, Fifth, and Fourteenth Amendments and concludes, "All of the above is clearly established to have been violated when parole agents forced Plaintiff to be banished from his home but allowed another sex offender to live there."  (Id.)  Thornton discusses California state court decisions recognizing liberty and property interests in continuing to live in one's home.  (Id. at 4-5.)

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A constitutional right is "clearly established" if it is "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). This standard ensures that government officials are on notice of the illegality of their conduct before they are subjected to suit. Id. (citing Saucier v. Katz, 533 U.S. 194, 206 (2001)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ." Id. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). The Court should attempt to resolve threshold immunity questions at the earliest possible stage in the litigation. See Hunter v. Bryant, 502 U.S. 224, 227 (1991); see also Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (noting that the purpose of resolving immunity issues early is so that officials are not subjected to unnecessary discovery or trial proceedings).

    "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." Hope, 536 U.S. at 736; see also Saucier, 533 U.S. at 201. If the allegations make out a constitutional violation, the Court must also determine whether the right alleged to have been violated is "clearly established." Saucier, 533 U.S. at 201. The Supreme Court recently

1  "reconsider[ed] the procedure required in <u>Saucier</u>, [and]

2  conclude[d] that, while the sequence set forth there is often

3  appropriate, it should no longer be regarded as mandatory."

4  <u>Pearson v. Callahan</u>, 555 U.S. 223, __ 129 S. Ct. 808, 818 (2009).

5      To overcome a defense of qualified immunity, the Plaintiff

6  "must claim the defendants committed a constitutional violation

7  under current law."  <u>Atteberry v. Nocona General Hosp.</u>, 430 F.3d

8  245, 253 (9th Cir. 2005).  In addition, "he must claim that the

9  defendants' actions were objectively unreasonable in light of the

10 law that was clearly established at the time of the actions

11 complained of."  <u>Id.</u>  Objective reasonableness is a question of

12 law.  <u>Id.</u> at 256.

13       In determining if a right is clearly established,
   [this Court] looks to whether (1) it was defined with
14     reasonable clarity, (2) the Supreme Court or the [circuit
       court of appeals for the jurisdiction] confirmed the
15     existence of the right, and (3) a reasonable defendant
       would have understood that his conduct was unlawful.
16

17 <u>Doninger v. Niehoff</u>, Nos. 09-1452-cv (L), 09-1601-cv (XAP), 09-

18 2261-cv (CON), 2011 U.S. App. LEXIS 8441, at *25 (2d Cir. Apr. 25,

19 2011) (citing <u>Young v. Cnty. of Fulton</u>, 160 F.3d 899, 903 (2d Cir.

20 1998); <u>see</u> <u>Dunn v. Castro</u>, 621 F.3d 1196, 1201 (9th Cir. 2010)

21 (looking to Supreme Court and Ninth Circuit precedent).

22     Thornton does not cite Supreme Court or Ninth Circuit case law

23 to support his claim that the Defendants are not entitled to

24 qualified immunity because the residency restrictions they imposed

25 violated clearly established law.  (<u>See</u> Opp'n Attach. #1 Mem. P. &

26 A. 6, ECF No. 46.)  Instead, he cites the First, Fifth, and

27 Fourteenth Amendments, and <u>People v. Pointer</u>, 151 Cal. App. 3d

28 1128, 1139-41, 199 Cal. Rptr. 357, 364-66 (1984) (finding that

probation condition prohibiting conception was unconstitutional),
and <u>People v. Beach</u>, 147 Cal. App. 3d 612, 622-23, 195 Cal. Rptr.
381, 387 (1983) (holding that "removing an elderly woman from her
home of 24 years" as a condition of probation was
unconstitutional).

Neither the Plaintiff nor the Court has identified any Supreme
Court or Ninth Circuit Court of Appeals case authority that clearly
establishes that in 2007 imposing residency restrictions required
by Jessica's Law, or analogous laws, violated parolees'
constitutional rights.  Indeed, as of February 1, 2010, when the
California Supreme Court decided <u>In re E.J.</u>, 47 Cal. 4th 1258, 223
P.3d 31, 104 Cal. Rptr. 3d 165 (2010), the constitutionality of the
parole conditions mandated by Jessica's Law still had not been
decided by the state supreme court.

When the law is uncertain, there are guideposts for the Court.

> Absent binding precedent, we look to the all
> available decisional law, including the law of other
> circuits and district courts, to determine whether the
> right was clearly established.  We also evaluate the
> likelihood that this circuit or the Supreme Court would
> have reached the same result.

<u>Osolinski v. Kane</u>, 92 F.3d 934, 936 (9th Cir. 1996) (citations
omitted).  Post-incident cases are generally not considered because
they "could not have 'established' the law retroactively." <u>Baker
v. Racansky</u>, 887 F.2d 183, 187 (9th Cir. 1989).  But post-incident
cases that determine whether the law was clearly established at the
time of the incident are persuasive.  <u>Id.</u>

In 2005, the Eighth Circuit decided <u>Doe v. Miller</u>, 405 F.3d
700, 704 (8th Cir. 2005), and upheld an Iowa statute "that
prohibits a person convicted of certain sex offenses involving

1  minors from residing within 2000 feet of a school or a registered

2  child care facility."

3          Because we conclude that the Constitution of the
        United States does not prevent the State of Iowa from

4       regulating the residency of sex offenders in this manner
        in order to protect the health and safety of the citizens

5       of Iowa, we reverse the judgment of the district court.
        We hold unanimously that the residency restriction is not

6       unconstitutional on its face.

7  Id. at 704-05.  The court identified twelve other states, including

8  California, that had some form of residency restriction applicable

9  to sex offenders.  Id. at 714, 714 n.4.

10     The Eighth Circuit considered the issue again in a 2006

11  challenge to an Arkansas law.  Weems v. Little Rock Police Dep't,

12  453 F.3d 1010, 1013 (8th Cir. 2006).  The court described the

13  Arkansas restriction, "[Sex] [o]ffenders in these classes are not

14  permitted 'to reside within two thousand feet (2000') of the

15  property on which any public or private elementary or secondary

16  school or daycare facility is located.'"  Id. (quoting Ark. Code

17  Ann. § 5-14-128(a)).  Because the state statutes and guidelines

18  provided for a "particularized risk assessment of sex offenders,"

19  "Arkansas law is on even stronger constitutional footing than the

20  Iowa statute."  Id. at 1017.  The court found no due process

21  violation.  Id. at 1019-20.

22     More recently, in Hattar v. Poulos, No. ED CV 09-01722-DOC

23  (VBK), 2010 U.S. Dist. LEXIS 99879, at *19 (C.D. Cal. Aug. 3, 2010)

24  (report & recommendation), adopted in 2010 U.S. Dist. LEXIS 98880,

25  at *1-2 (C.D. Cal. Sept. 15, 2010) (order adopting report &

26  recommendation), the habeas petitioner challenged "the residency

27  restriction set forth in Penal Code § 3003.5(b) and incorporated in

28  his parole conditions . . . ."  Judge Kenton concluded that there

1    was no clearly established Supreme Court law acknowledging "the

2    right of a paroled sex offender to live wherever he wishes."   Id.

3    at *22-23.   The court noted, "Although he alleges that he can no

4    longer live in his family residence, he has not alleged that he is

5    unable to establish a home or live with his family members

6    elsewhere."   Id. at *23.

7    Thornton has not sufficiently alleged that Defendants engaged

8    in conduct that violated his constitutional rights.   The

9    constitutional right claimed by Thornton was not "clearly

10   established" at the time he was subjected to the parole conditions.

11   Accordingly, Defendants are entitled to qualified immunity, and

12   their Motion to Dismiss on this basis is **GRANTED**.

13   **E.    Absolute Immunity**

14   All of the Defendants argue that to the extent they were

15   imposing parole conditions, they are entitled to absolute immunity.

16   (Mot. Dismiss Attach. #1 Mem. P. & A. 8-9, ECF No. 24.)   They

17   assert that the imposition of parole conditions is a quasi-judicial

18   function, and parole agents who impose the conditions are

19   absolutely immune from liability.   (Id. at 9.)   Plaintiff does not

20   address Defendants' absolute immunity argument in his Opposition.

21   (See generally Opp'n Attach. #1 Mem. P. & A. 1-8, ECF No. 46.)

22   "The proponent of a claim to absolute immunity bears the

23   burden of establishing the justification for such immunity."

24   Antoine v. Byers & Anderson, 508 U.S. 429, 432 (1993).   The

25   Eleventh Amendment grants the states immunity from private civil

26   suits.   U.S. Const. amend. XI; Henry v. County of Shasta, 132 F.3d

27   512, 517 (9th Cir. 1997), as amended, 137 F.3d 1372 (9th Cir.

28   1998).   It also provides immunity for state officials sued in their

42

official capacities.   "[A] suit against a state official in his or
her official capacity is not a suit against the official but rather
is a suit against the official's office."   Will v. Mich. Dep't of
State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469
U.S. 464, 471 (1985)).   "As such, it is no different from a suit
against the State itself."   Id. (citing Kentucky v. Graham, 473
U.S. 159, 165-66 (1985)); Monell, 436 U.S. at 690 n.55.

Probation and parole officers are entitled to absolute
immunity when performing quasi-judicial functions.   Swift v.
California, 384 F.3d 1184, 1189 (9th Cir. 2004).   They are not
entitled to absolute immunity, however, when performing functions
similar to those of a police officer, such as taking a parolee into
custody.   Id. at 1191-92.   Parole officers "are entitled to
absolute quasi-judicial immunity for decisions 'to grant, deny, or
revoke parole' because these tasks are 'functionally comparable' to
tasks performed by judges."   Id. at 1189 (quoting Sellars v.
Procunier, 641 F.2d 1295, 1303 (9th Cir. 1981)).   Absolute immunity
has also been extended to parole officers "for the 'imposition of
parole conditions' and the 'execution of parole revocation
procedures'" because the Ninth Circuit treats such tasks as
"integrally related to an official's decision to grant or revoke
parole."   Id. (quoting Anderson v. Boyd, 714 F.2d 906, 909 (9th
Cir. 1983)).

Indeed, a state officer sued in his official capacity is
entitled to Eleventh Amendment immunity.   See Hafer v. Melo, 502
U.S. 21, 25 (1991); Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir.
1999).   But a state officer is not entitled to Eleventh Amendment
immunity when he is sued in his individual capacity only.   Hafer,

10cv01583 RBB

1  502 U.S. at 31; <u>Romano</u>, 169 F.3d at 1185; <u>see</u> <u>Smith v. Kitzhaber</u>,

2  No. CV-00-326-ST, 2000 U.S. Dist. LEXIS 6998, at *6-7 (D. Or. Mar.

3  20, 2000); <u>AIDS Healthcare Found. v. Belshe</u>, No. CV97-3235 LGB

4  (MCx), 1998 U.S. Dist. LEXIS 21367, at *31 (C.D. Cal. Dec. 8,

5  1998).  "We hold that state officials, sued in their individual

6  capacities, are 'persons' within the meaning of § 1983.  The

7  Eleventh Amendment does not bar such suits, nor are state officers

8  absolutely immune from personal liability under § 1983 solely by

9  virtue of the 'official' nature of their acts." <u>Hafer</u>, 502 U.S. at

10  31.

11      To determine whether a state officer is sued in his individual

12  or official capacity, the court must examine "the capacity in which

13  the state officer is <u>sued</u>, not the capacity in which the officer

14  inflicts the alleged injury." <u>Hafer</u>, 502 U.S. at 26 (emphasis

15  added); <u>Romano</u>, 169 F.3d at 1185; <u>Ashker v. California Dept. of</u>

16  <u>Corrections</u>, 112 F.3d 392, 395 (9th Cir. 1997).  State officers are

17  not entitled to immunity from suit simply because a plaintiff

18  alleges they injured him while acting in their official capacities

19  as employees of the state.  <u>Hafer</u>, 502 U.S. at 26-27.

20      Thornton has not sued any of the Defendants in their official

21  capacities.  (Compl. 1-2, ECF No. 1.)  Although his claims are

22  related to the imposition and enforcement of his parole conditions,

23  which is part of a parole officer's official duties, their immunity

24  depends on the capacity in which the defendants are sued.  <u>See</u>

25  <u>Hafer</u>, 502 U.S. at 26; <u>Cordell</u>, 515 F. Supp. 2d at 1120 (order

26  adopting report & recommendation); (<u>see also</u> Compl. 1-2, ECF No.

27  1.)  Because Thornton has explicitly sued Defendants in their

28

individual capacities, they are not entitled to absolute immunity.[5]

See Hafer, 502 U.S. at 31; Romano, 169 F.3d at 1185.  Accordingly,

Defendants' Motion to Dismiss based on absolute immunity is **DENIED**.

### IV.  CONCLUSION

Because Plaintiff's claims are not cognizable under § 1983,

Defendants' Motion to Dismiss the Complaint is **GRANTED**.  Thornton's

challenge to his conditions of parole must be prosecuted in a

petition for habeas relief.

Defendants' Request for Judicial Notice is also **GRANTED**.  As

outlined above, Plaintiff's Request for Judicial Notice is **GRANTED**

in part and **DENIED** in part.

Defendants' Motion to Dismiss the Complaint against Defendants

Schwarzenegger, Cates, and Lewis for failing to allege their

personal involvement is **GRANTED**.  Defendants' Motion to Dismiss

counts one and two against Defendants Cavalin and Joseph for

failing to allege their individual involvement is **DENIED**; the

Motion to Dismiss count three against them is **GRANTED**.

Furthermore, Defendants' Motion to Dismiss Plaintiff's claims

against all Defendants based on qualified immunity is **GRANTED**.

Finally, because Defendants are sued in their individual capacities

only, they are not entitled to absolute immunity, and their Motion

to Dismiss the Complaint on this basis is **DENIED**.

---

[5] Thornton cannot cure other defects in this action by
asserting a claim against these Defendants in their official
capacities for the setting of parole conditions.  "The imposition
of parole conditions is an integral part of a decision to grant
parole."  Anderson v. Boyd, 714 F.2d 906, 909 (9th Cir. 1983)
(citing Morrissey v. Brewer, 408 U.S. 471, 478 (1972)).  "It
follows that the defendants cannot be held liable [because of their
absolute immunity] for conduct relating to the imposition of parole
conditions."  Id.; accord Fulton v. Thayer, No. CV 10-0137-GAF
(MAN) 2010 U.S. Dist. LEXIS 25935, at *11 (C.D. Cal. Mar. 19,
2010).

1    Thornton's Complaint is dismissed without prejudice so that he

2 may bring his claims in a properly filed habeas petition. Trimble

3 v. City of Santa Rosa, 49 F.3d at 586.

4

5 DATE: June 1, 2011

6                                    Ruben B. Brooks, Magistrate Judge
                                     United States District Court

7 cc:   All Parties of Record

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28